UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| H.C. and R.D.C., by and through his next friends, his parents, R.D. and H.C., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 5: 16-235-DCR |
| V. | ) ) | |
| FLEMING COUNTY KENTUCKY BOARD OF EDUCATION, et al., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendants Fleming County Kentucky Board of Education, Brian Creasman, Carol Thompson, and Michele Hawkins' motion for summary judgment. [Record No. 43] Plaintiff R.D.C. alleges that the defendants failed to provide him with a free adequate public education, discriminated against him in violation § 504 of the Rehabilitation Act ("§ 504"), the Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 1983, and violated his procedural due process rights under the Fourteenth Amendment. Plaintiffs H.C. and R.D.C. allege that the defendants retaliated against them in violation of state and federal law. Finally, the plaintiffs allege state law claims of negligence, negligent training and supervision, and intentional infliction of emotional distress.[1] For the

---

[1] The plaintiffs also contend that Defendant Hawkins violated R.D.C.'s right to confidentiality under the Family Educational Rights and Privacy Act ("FERPA"). [Record No. 1, ¶¶ 60-63] However, they now concede that there is no private right of action under FERPA. *See Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002). Accordingly, that count will be dismissed as well.

-1-

reasons outlined below, the motion for summary judgment will be granted in its entirety, and the plaintiffs' claims will be dismissed.

## I.     FACTUAL BACKGROUND

Plaintiff R.D.C. was a fourth and fifth grade student at Hillsboro Elementary School ("HES") during the 2014-15 and 2015-16 school years. He was cited twenty-six times during that period for various incidents of bullying, harassment, disrespectful behavior, defiance of authority, and fighting. [Record 43-2, Attachment L] HES also received at least five reports from other parents that R.D.C. was bullying his classmates during this period. [Record No. 43-2, Attachment I] R.D.C. denied being at fault for most of these incidents. He claimed that his bus driver, teachers, principal, and other school personnel made things up to get him in trouble, and complained that "no one believed him" and he "[got] blamed for everything." [*Id.*]

H.C. believed that R.D.C. was being mistreated by the other students, teachers, and school personnel, and was "very aggressive in her protection [of] her child . . . ." [Record No. 1, ¶ 28] According to R.D.C.'s fourth grade teacher, Angel Hilterbrand, his fifth grade teacher, Defendant Michele Hawkins, and his principal, Defendant Carol Thompson, H.C. and R.D.C. claimed numerous times that R.D.C. was being physically or verbally harassed by his peers, but these accusations could not be verified following investigation by his teachers or Principal Thompson. [Record Nos. 43-3, ¶¶ 5-6; 43-4, ¶ 5; 43-5, ¶ 8] Each stated that they never personally observed any mistreatment of R.D.C.

To the contrary, Hilterbrand reported that during the 2014-15 school year R.D.C. "displayed bullying behavior toward his classmates and toward [him]," and on one occasion told Hilterbrand that he would "burn in hell." [*Id.* ¶ 12] Principal Thompson referred R.D.C.

to counseling on October 1, 2014, based on the following observations: "He is disrespectful to staff and students. States that no one helps him. He wants to stay home. Picks at other students. Doesn't trust any adult at school." [Record No. 43-3, Attachment E] But R.D.C.'s parents refused the counseling services. [*Id.*]

According to Defendant Hawkins, during the 2015-16 school year, R.D.C. "primarily displayed average behaviors in class compared to his same-age peers, and engaged in misconduct during unstructured time such as hallway transitions, recess, and in the cafeteria." [Record No. 43-4, ¶ 6] Defendant Hawkins referred R.D.C. to counseling on October 8, 2015, based on her observations that he "shows anger and opposition when students accuse him of things, and then is upset when teacher asks him—very defensive. Has lied multiple times to teacher regarding his behavior, bullies and name calls other kids. No respect for authority from him or his mother." [Record No. 43-4, Attachment A] The school therapist contacted H.C. about the referral. [*Id.*] However, H.C. again refused the services, and the therapist noted that she was angry to receive the phone call and threatened her, saying that if she called again "so help me God, the outcome won't be pretty." [*Id.*]

The record is replete with contentious encounters between H.C. and the HES staff, which H.C. viewed as aggressive protection of her child, and the HES staff viewed as intimidating, bullying, and abusive behavior. [*See* Record Nos. 43-2; 43-3; 43-4; 43-5; 43-6.] Hilterbrand testified that, as a result of H.C.'s bullying, he "became fearful for [his] safety," "would not walk to [his] car alone," and requested not to meet with H.C. without being accompanied by another employee. [*Id.* ¶¶ 4-5, 10-12] Hilterbrand reportedly received "abusive and intimidating phone calls and text messages from H.C. at [his] residence and on [his] personal cell phone in the evenings and on weekends." [*Id.* ¶ 3] Similarly, Hawkins

claims that "H.C. spoke with [her] in person and by telephone in an abusive, threatening, and degrading manner, which interfered with [her] performance of [her] duties" on numerous occasions.  [Record No. 43-4, ¶ 11]

Both teachers reported these incidents to Principal Thompson and the superintendent, Defendant Creasman.  [Record Nos. 43-4, ¶ 13; 43-5, ¶ 4]  In response to numerous complaints from HES personnel about their interactions with H.C. on their personal phones, Superintendent Creasman sent H.C. a letter on November 6, 2014, requesting that all future communication with school staff be through the school office rather than their personal phones. [Record No. 43-2, ¶ 4, Attachment A]

The plaintiffs' attorney responded with a letter to Superintendent Creasman dated November 20, 2015, requesting "a § 504 hearing due to Fleming County's failure to identify the child, to provide the child a free and appropriate education, to educat[e] their child in a safe environment[,] and to protect the child from verbal abuse while attending [HES]."  [Record No. 43-2, Attachment B]  R.D.C.'s teachers and principal all claim that, prior to this date, they were never informed that R.D.C. had any diagnosis of any disability, and never formed the conclusion that a referral for a disability evaluation was needed.  [Record No. 43-3, ¶ 16; 43-4, ¶¶ 3, 10; 43-5, ¶¶ 7, 13]  R.D.C. did receive speech therapy when he was younger, but he was released in 2013.  [Record No. 57-1]  H.C. also testified that R.D.C. had medical diagnoses of asthma, allergies, and migraine headaches.  [Record No. 60, Attachment 1, p. 79-81]

Several incidents occurred shortly thereafter.  Principal Thompson called H.C. after the Thanksgiving break to schedule a meeting to discuss the § 504 process.  [Record No. 43-3, ¶ 8]  However, H.C. became angry with Principal Thompson for calling and told her to contact her attorney instead.  [*Id.*]  H.C. came to the school office on December 9, 2015, and accused

Thompson of harassing her family. [*Id.* at ¶ 9] Then, R.D.C. received in-class discipline on December 14, 2015 for being disrespectful to Defendant Hawkins. [*Id.* at ¶ 10] H.C. called Principal Thompson that afternoon and accused her of lying about the reason for the in-class discipline. [*Id.*] R.D.C. allegedly hit a classmate with an oversized pencil on December 18, 2015, the last day of school before winter break. [*Id.* at ¶ 11] He was suspended for three days as a result. [Record No. 43-3, Attachment A]

Principal Thompson wrote to H.C. over the winter break, requesting that all future contact with the school be in writing. [Record No. 43-2, ¶ 7, Attachment C] H.C. disregarded this letter and called Principal Thompson on January 4, 2016 to appeal R.D.C.'s suspension. [Record No. 43-3, ¶ 13] She also asked Superintendent Creasman to overturn R.D.C.'s suspension during a meeting that same day. [Record No. 43-2, ¶ 8] Both Principal Thompson and Superintendent Creasman declined to modify the suspension.

Two days after returning to school, R.D.C. reportedly threatened to shoot another student during an argument. [Record No. 43-3, ¶ 14] He and the other student were each suspended for three days, from January 11, 2016 to January 13, 2016, and required to complete a threat assessment before returning to school. [*Id.* ¶ 14, Attachment C] The Kentucky Department of Education contacted Principal Thompson that same morning and notified her that H.C. had made a complaint against the school staff. [*Id.* ¶ 15] Based on her recent experiences with H.C., this phone call, and her anticipation of H.C.'s reaction to R.D.C.'s suspension, Principal Thompson sent Superintendent Creasman a letter recounting her interactions with H.C. [Record Nos. 43-2, Attachment E; 43-3, ¶ 15] After receiving the letter, Superintendent Creasman determined that a heightened response was necessary, and wrote to

H.C. on January 12, 2016, directing her not to come onto school property without his prior permission. [Record No. 43-2, ¶ 10, Attachment F]

Based on her past experiences in procuring a threat assessment, Principal Thompson expected R.D.C. to return to school after three days, on January 14, 2016 (the same return date as the other suspended student). [*Id.* ¶ 14] However, R.D.C.'s threat assessment was not performed until March 14, 2016. [Record No. 43-2, Attachment J] It was not received by the school until April 27, 2016, when the parties finally held a § 504 meeting. [Record Nos. 43-2, ¶ 15; 43-3, ¶ 14] R.D.C. returned to school the following day. H.C. had previously attempted to bring R.D.C. to school on March 21, 2016, after the threat assessment was performed, but before it was provided to HES. However, when she arrived at school, the school secretary told H.C. that she was prohibited from entering school property, and notified Defendants Creasman and Thompson of her presence. [Record No. 43-6, ¶¶ 5-6] Defendant Creasman filed a criminal trespass complaint against H.C. as a result. [Record 43-2, Attachment K]

It further appears that R.D.C.'s sister also did not attend school while R.D.C. was absent, although no disciplinary action was taken which would have prevented her from attending. [Record Nos. 43-2, ¶ 19] As a result, truancy charges were brought against H.C., based on an affidavit stating that R.D.C.'s sister had twenty-two unexcused absences during the school year. [Record No. 57, Exhibit 14]

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Chao v. Hall Holding Co.*, 285

F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008). In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

### A. The Plaintiffs' Discrimination and Retaliation Claims

#### 1. Individual Capacity Liability under § 504, the ADA, and KRS Chapter 344

The Sixth Circuit has held that § 504 and the ADA do not give rise to individual liability. *See Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("[N]either the ADA nor the [Rehabilitation Act] impose liability upon individuals"); *see also Williams v. McLemore*, 247 F. App'x 1, 8 (6th Cir. 2007) ("[T]he ADA does not permit public employees or supervisors to be sued in their individual capacities.") (citing *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 808 n. 1 (6th Cir. 1999); *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404-05 n.6 (6th Cir. 1997); *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000)). It has also explained that this same analysis extends to KRS Chapter 344. *See Wathen*, 115 F.3d at 405. The plaintiffs have neither addressed this issue nor presented any claim which would warrant departing from this binding precedent. Accordingly, the plaintiffs' § 504, ADA, and KRS

Chapter 344 claims against Defendants Creasman, Thompson, and Hawkins, in their individual capacities, will be dismissed.[2]

### 2. R.D.C.'s Discrimination Claims

Defendant Fleming County Kentucky Board of Education (the "Board") argues that R.D.C.'s claims that he was discriminated against, denied educational services, and subjected to disparate treatment in violation of § 504, the ADA, and 42 U.S.C. § 1983, should be dismissed because R.D.C. failed to exhaust his administrative remedies. The Board contends that, although R.D.C. did not expressly bring a claim under the Individuals with Disabilities Education Act ("IDEA"), he was required to comply with the IDEA's exhaustion requirements.

The IDEA requires recipients of federal funds to furnish a free appropriate public education ("FAPE") to children with disabilities. *See* 20 U.S.C. § 1412(a)(1) (2012). This guarantee is protected with certain procedural safeguards. *Id.* § 1415. Parties may present a complaint concerning the provision of FAPE, *id.* § 1415(a)(6), and may be entitled to a "due process hearing" before an impartial hearing officer. *Id.* § 1415(f). A party aggrieved by the result of an IDEA due process hearing may appeal the result to the state educational agency.

---

[2] Official capacity claims are essentially claims against the entity itself. *See Brandon v. Holt*, 469 U.S. 464, 471, 105 S. Ct. 873, 878, 83 L. Ed. 2d 878 (1985); *Soper v. Hoben*, 195 F.3d 845, 856 (6th Cir. 1999) ("[T]here is no longer a need to bring official-capacity actions against local government officials, for local government units can be sued directly for damages and injunctive or declaratory relief.") (ellipses omitted) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)). Because the Fleming County Kentucky Board of Education is named as a defendant in this litigation, the official capacity claims against Defendants Creasman, Thompson, and Hawkins, will be treated as claims against that entity. Accordingly, the only remaining defendant regarding the plaintiffs' discrimination and retaliation claims is the Fleming County Kentucky Board of Education.

*Id.* § 1415(g). The outcome of the administrative review hearing may then be challenged in district court. *Id.* § 1415(i)(2).

These exhaustion requirements also apply to claims brought under other federal laws such as the Constitution, the ADA, and § 504, when they seek "relief that is also available under [the IDEA]." 20 U.S.C. § 1415(l). The United States Supreme Court recently explained that whether claims brought under other federal laws must comply with the IDEA's exhaustion requirements "hinges on whether [the] lawsuit seeks relief for the denial of a free appropriate public education." *Fry v. Napoleon Cmty. Sch.*, --- U.S. ---, 137 S. Ct. 743, 754, 197 L. Ed. 2d 46, 60-61 (2017) (citing 20 U.S.C. § 1415(l)).

In determining whether a lawsuit seeks relief for the denial of a FAPE, a court "should look to the substance, or gravamen, of the plaintiff's complaint." *Id.* at 752, 197 L. Ed. 2d at 59. If the plaintiff alleges the denial of a FAPE, "the plaintiff cannot escape § 1415(l) merely by bringing her suit under a statute other than the IDEA . . . ." *Id.* at 754, 197 L. Ed. 2d at 60. "But if, in a suit brought under a different statute, the remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required." *Id.*, 197 L. Ed. 2d at 60. To assess the gravamen of the complaint, "a court should attend to the diverse means and ends of the statutes covering persons with disabilities—the IDEA on the one hand, the ADA and Rehabilitation Act (most notably) on the other." *Id.* at 755, 197 L. Ed. 2d at 62. "[T]he IDEA guarantees individually tailored educational services, while Title II and § 504 promise non-discriminatory access to public institutions." *Id.* at 756, 197 L. Ed. 2d at 62.

Accordingly, the Court is advised to consider two hypothetical questions: (i) whether the plaintiff could have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school, and (ii) whether an *adult* at the school could have

pressed essentially the same grievance. *Id.* at 756, 197 L. Ed. 2d at 62-63. For example, a discrimination suit against a school for failing to provide wheelchair access ramps would not be subject to the IDEA's exhaustion requirements, because it could be brought against any public facility that lacked access ramps, and could be brought against the school by an adult. *Id.*, 197 L. Ed. 2d at 63. However, a claim against a school for failing to provide remedial mathematics tutoring to a student with a disability could not be brought against another public facility, and it could not be brought by an adult at the school, so it would be subject to exhaustion. *Id.* at 757, 197 L. Ed. 2d at 63.

Construed in the light most favorable to the plaintiff, the Complaint alleges that Board violated § 504, the ADA, and 42 U.S.C. § 1983 for two distinct reasons. First, the plaintiff alleges that the Board failed to identify R.D.C.'s disability, develop an education plan, and provide R.D.C. with a FAPE. [*See* Record No. 1, ¶ 11.] ("[R.D.C.] alleges that he is a child with a disability that was known to the [d]efendant, but [the defendant] failed to provide a free appropriate education . . . ."); [*id.* ¶ 48] ("The [d]efendants have failed to identify evaluate or develop an education plan that would allow the child to receive a free and appropriate education . . . ."); [*id.* ¶ 50] ("As a result of being denied a Free and Appropriate Education, he has suffered harm, for which he demands compensation."); [*id.* ¶ 55] (contesting the "deprivation of [R.D.C.'s] right to an appropriate education"); [*see also* Record No. 57-12] (alleging that the defendant failed "to identify the child, to provide the child a free and appropriate education, to educat[e] [the] child in a safe environment and to protect the child from verbal abuse . . . ."). These claims seek relief for the denial of a free appropriate public education. They could not be brought if the alleged conduct occurred at a public facility that was not a school, and an adult at the school could not have pressed essentially the same

grievances.  *See Fry*, 137 S. Ct. at 756, 197 L. Ed. 2d at 62-63.  As a result, they are subject to the IDEA's exhaustion requirements.

The second class of claims under § 504, the ADA, and 42 U.S.C. § 1983 allege that the Board discriminated against R.D.C. by imposing harsher discipline and declining to provide educational services to him because of his alleged disability.  [*See* Record No. 1, ¶ 58.]  ("The [d]efendant has discriminated against the [p]laintiff by singling him out for disparate treatment in the terms and [*sic*] discipline and services."); [*id.* ¶ 1 of the *ad damnum* clause] ("[T]he [p]laintiff . . . was a victim of disparate treatment due to his disability."); [*see also* Record No. 57, p. 3-4] (arguing that Principal Thompson subjected R.D.C. "disparate discipline" by referring him to Fleming Juvenile Court for being beyond control).

This set of claims is also subject to the IDEA's exhaustion requirements.  [*See* Record No. 43-1, p. 12.]  Because of the "close relationship between the use of discipline and in-class instruction in providing a child with a 'free appropriate public education,'" *Hayes ex rel. Hayes v. Unified Sch. Dist. No. 377*, 877 F.2d 809 (10th Cir. 1989), courts have held that "[c]omplaints concerning the general disciplinary practices of a school district . . . relate to the way that the district provides education and 'thus necessarily come within the scope of the IDEA.'" *S.S. ex rel. Stutts v. Eastern Kentucky Univ.*, 307 F. Supp. 2d 853, 857-58 (E.D. Ky. 2004) (quoting *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 916 (6th Cir. 2000)).

However, after *Fry*, courts are directed to look at the "substance, not surface" of the complaint to determine whether the "gravamen of [the] complaint seeks redress for a school's failure to provide a FAPE." *Fry*, 137 S. Ct. at 755, 197 L. Ed. 2d at 61-62.  Depending on the nature of the case, some challenges to disciplinary practices may be subject to the IDEA's exhaustion requirements, while others may not. *Compare J.M. v. Francis Howell Sch. Dist.*,

850 F.3d 944, 949-50 (8th Cir. 2017) (holding that the plaintiff's claim that the school district imposed discipline prohibited by his individualized education program was subject to the IDEA's exhaustion requirements), *with K.G. v. Sergeant Bluff-Luton Cmty. Sch. Dist.*, --- F. Supp. 3d ---, 2017 WL 1098829, *11 (N.D. Iowa, March 23, 2017) (holding that exhaustion was not required when the plaintiff's claim sought relief for a teacher's unreasonable use of force, and not the denial of a FAPE).

The thrust of R.D.C.'s claim is that he was kept out of school—i.e., denied a FAPE—because of his disability, and that he did not receive adequate educational services during this period. [*See* Record No. 1, ¶ 36.] ("[R.D.C.] did not receive educational instruction until he began receiving home school services on or about February 21, 2016."); [*id.* ¶ 49] ("The [d]efendants failed to provide the [p]laintiff with appropriate educational services from December 18, 2015 to April 28, 2016 . . . ."); [*id.* ¶ 50] ("As a result of the child being denied a Free and Appropriate Education, he has suffered harm, for which he demands compensation."); [*id.* ¶ 55] ("As a result of the [d]efendant [*sic*] deprivation of his right to an appropriate education, the [p]laintiff has been harmed which demands compensation.").

Unlike a claim that the school building lacked access ramps, a claim that a child was kept out of school and deprived of adequate educational services could not be brought against another public facility. *See Fry*, 137 S. Ct. at 756, 197 L. Ed. 2d at 62. An adult at the school could not bring essentially this same grievance. *Id.*, 197 L. Ed. 2d at 63. As a result, the plaintiff's second set of claims are also subject to the IDEA's exhaustion requirements.

R.D.C. contends that he should not be required to exhaust his administrative remedies because his Complaint seeks a remedy which is not available under the IDEA; that is, money damages. However, the Sixth Circuit has held that the fact that a plaintiff seeks such relief,

rather than an injunction, "does not in itself excuse the exhaustion requirement." *Fry v. Napoleon Cmty. Sch.*, 788 F.3d 622 (6th Cir. 2015), *rev'd on other grounds*, 137 S. Ct. 743 (2017) (citing *F.H. ex rel. Hall v. Memphis City Sch.*, 764 F.3d 638, 643 (6th Cir. 2014); *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 916 (6th Cir. 2000)). Otherwise, the court has explained, "plaintiffs could evade the exhaustion requirement simply by 'appending a claim for damages.'" *Id.* (quoting *F.H.*, 205 F.3d at 917).

R.D.C. also asserts that he should not be required to exhaust administrative remedies because the IDEA does not provide a private right of action. But this contention is simply inaccurate. The IDEA does provide for a private right of action. It simply requires plaintiffs to exhaust their administrative remedies first. 20 U.S.C. § 1415(i); *see also N.S. v. Tenn. Dep't of Educ.*, No. 3:16–cv–0610, 2016 WL 3763264, *10 (M.D. Tenn. July 14, 2016) ("While the IDEA provides for a private right of action, it requires that plaintiffs first exhaust the administrative procedures."). Accordingly, R.D.C.'s claims that he was subjected to disparate treatment in violation of § 504, the ADA, and 42 U.S.C. § 1983, will be dismissed for failure to exhaust administrative remedies.

### 3. R.D.C. and H.C.'s Retaliation Claims

Plaintiffs R.D.C. and H.C. allege that the Board responded to H.C.'s complaints that R.D.C. was being mistreated at HES, and the § 504 hearing request filed on R.D.C.'s behalf, by suspending R.D.C. twice, banning H.C. from school property, and prosecuting H.C. for criminal trespass and truancy. They seek relief for retaliation under § 504 and KRS Chapter 344.[3] *See* 29 C.F.R. 33.13 (2017); Ky. Rev. Stat. Ann. ("KRS") § 344.280.

---

[3] Consistent with Sixth Circuit and Kentucky practice, the claims arising under § 504 and KRS Chapter 344 will be analyzed together. *See Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404 n.5

Because the plaintiffs do not present any direct evidence of retaliation, their claims are evaluated under the *McDonnell Douglas* burden-shifting approach. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). The plaintiffs bear the initial burden under this approach of presenting a *prima facie* case of retaliation. *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (2013) (citing *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004)). To present a *prima facie* case, the plaintiffs must establishing that: (i) they were engaged in a protected activity; (ii) the defendant knew of this protected activity; (iii) the defendant took an adverse action against the plaintiffs; and (iv) there was a causal connection between the protected activity and the adverse action. *Id.* (citing *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001)). "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Id.* (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)).

If the plaintiffs successfully present a *prima facie* case of retaliation, the burden shifts to the defendant to show by a preponderance of the evidence that there was a legitimate, non-discriminatory reason for the adverse action. *DiCarlo*, 358 F.3d at 414-15; *see also Nixon v. Greenup Cnty. Sch. Dist.*, 890 F. Supp. 2d 753, 759-60 (E.D. Ky. 2012). And if they make such a showing, the burden then shifts back to the plaintiffs to establish that the defendant's proffered reason for the adverse action was merely pretextual. *DiCarlo*, 358 F.3d at 414-15.

---

(6th Cir. 1997) ("[I]t is common practice to look to the federal counterpart in construing KRS Chapter 344.") (citing *Palmer v. Int'l Ass'n of Machinists*, 882 S.W.2d 117, 119 (Ky. 1994)). Although Defendant Fleming County Kentucky Board of Education argues that it is not subject to KRS Chapter 344, the Court will assume *arguendo* that KRS Chapter 344 applies, and evaluate the claims under § 504 and KRS Chapter 344 in tandem.

The plaintiffs claim that the Board retaliated against them because of H.C.'s repeated complaints that R.D.C. was being mistreated by his peers and HES employees. [Record No. 1, ¶¶ 66, 92-95] They argue that H.C.'s complaints constitute protected activity because they were "protected" by a provision of the 2016-17 school handbook ensuring that parents have a right to "[a]ddress a question concerning their child to the proper authority and receive a reply in a reasonable time period." [Record No. 57, p. 12; Record Nos. 57-11; 57-12] They also note that harassment was prohibited by the school handbook.[4] However, the fact that a student handbook provides a "right" to a certain activity, does not entail that it is a "protected activity" under § 504 or KRS Chapter 344. Those provisions protect individuals from suffering adverse consequences as a result of asserting their statutory rights. *See* 29 C.F.R. 33.13; KRS § 344.280. They do not guarantee "rights" conferred by a student handbook.

H.C.'s complaints were based on allegations that R.D.C. was being bullied and harassed at HES. There is no evidence that any of her complaints were in any way related to any alleged disability of R.D.C., or that she was asserting R.D.C.'s statutory rights. As a result, the plaintiffs failed to present a *prima facie* case that the defendants retaliated against them, in violation of § 504 or KRS Chapter 344, in response to H.C.'s complaints to HES. However, there is no dispute that the § 504 hearing request filed on R.D.C.'s behalf does constitute "protected activity." *See* 29 C.F.R. § 33.13 (prohibiting retaliating against an individual because they filed a complaint under § 504). And there is also no dispute that the Board was

_____

[4] The 2016-17 handbook did not take effect until *after* the allegedly retaliatory conduct took place. There is no evidence in the record that the applicable school handbooks contained provisions similar to the ones H.C. cites.

aware of this request. The inquiry thus turns to whether the Board took an "adverse action" against the plaintiffs in response to this request.

To be adverse, "a retaliatory action must be enough to dissuade a reasonable person from engaging in the protected activity; 'petty slights or minor annoyances' cannot qualify." *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d at 698 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2406, 165 L. Ed. 2d 345 (2006)). The actions alleged by plaintiffs clear this hurdle. Suspending a student, banning a parent from school property,[5] and causing criminal trespass and truancy charges to be instituted are "adverse actions" which would dissuade a reasonable person from engaging in conduct likely to solicit those consequences. *See, e.g.*, *Gribcheck*, 245 F.3d at 550 (6th Cir. 2001) (finding that a fourteen day employment suspension was an adverse action).

The last element of the *prima facie* case is whether there is a causal connection between the § 504 hearing request and the adverse actions. The plaintiffs address this point by providing the following timeline: the plaintiffs requested a § 504 hearing on November 20, 2015; R.D.C. was suspended once on December 18, 2015, and then again on January 8, 2016; Defendant Creasman banned H.C. from HES property on January 12, 2016; H.C. was summoned to Fleming County District Court for truancy on April 12, 2016; and H.C. was summoned to Fleming County District Court for criminal trespass on May 14, 2016. The plaintiffs contend that this timeline of events establishes a causal connection because "[a]ll of

---

[5] A school may prevent a parent from coming to school to avoid disruption. *See Frost v. Hawkins Cnty. Bd. of Educ.*, 851 F.2d 822, 827 (6th Cir. 1988). However, if it does so for a retaliatory purpose, it may be an adverse action.

the events obviously occurred after the [p]laintiff filed her request for a § 504 hearing . . . ." [Record No. 57, p. 15]

Temporal proximity is a relevant consideration in determining whether there is a causal connection between protected activity and an adverse action. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523-28 (6th Cir. 2008). While temporal proximity alone will suffice only in "rare cases," *id.* at 525, the Sixth Circuit has held that, "where the adverse action comes 'very close in time' after the exercise of protected activity, 'such temporal proximity is significant enough' to meet the burden alone." *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d at 699 (quoting *Mickey*, 516 F.3d at 525). Although it remains unclear exactly how close the adverse action must be to the protected activity to trigger this rule, the Court will assume *arguendo* that the plaintiffs have cleared the "minimal burden," *id.* at 701, of presenting enough evidence of causation to establish a *prima facie* case. *See Mickey*, 516 F.3d at 528 (explaining that a temporal proximity of closer than four months can raise an inference of retaliation); *McNett v. Hardin Cmty. Fed. Credit Union*, 118 F. App'x 960, 965 (6th Cir. 2004) (finding causation when "only 13 days" separated the protected activity from the adverse action); *Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) (finding that a temporal proximity of four months was insufficient); *see also Ramirez v. Oklahoma Dept. of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994) (holding that a one and one-half month period between protected activity and adverse action may, by itself, establish causation); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (holding that a three-month period, standing alone, is insufficient to establish causation).

Based on that assumption, the plaintiffs have established a *prima facie* case of retaliation. As a result, the burden shifts to the Board to show by a preponderance of the

evidence that there was a legitimate, non-discriminatory reason for the adverse actions. *DiCarlo*, 358 F.3d at 414-15. The Board has easily carried that burden. It contends that R.D.C. was suspended on December 18, 2015, for hitting another student with an oversized pencil, and on January 8, 2016, for threatening to shoot another student. Principal Thompson's testimony and the notices of disciplinary action addressed to R.D.C.'s parents support the Board's explanations. [Record No. 43-3, ¶¶ 11, 14, Attachments A, C] Additionally, HES received two complaints from parents regarding the incident on December 18, 2015, which also support the Board's claim. [Record No. 43-2, Attachment I]

The Board argues that the January 12, 2016 letter directing H.C. not to come onto school property without Superintendent Creasman's prior permission was not in retaliation for filing a request for a § 504 hearing, but instead was in response to Principal Thompson's January 8, 2016 letter recounting her experiences with H.C., and "due to H.C.'s failure to follow previous requests regarding the manner in which she behaved toward personnel at the school . . . ." [Record No. 43-2, ¶¶ 9-10, Attachments E, F] There is no dispute that H.C. was "very aggressive in her protection [of] her child . . . ." [Record No. 1, ¶ 28] The Board's explanation is supported by extensive record evidence of unpleasant encounters between H.C. and HES personnel. [*See* Record Nos. 43-2, 43-3, 43-4, 43-5, 43-6.]

The Board contends that the criminal trespass complaint filed against H.C. resulted from her decision to disregard Defendant Creasman's letter, not from her decision to file a request for a § 504 hearing on R.D.C.'s behalf. This claim is supported by the testimony of the HES secretary, Pam Trent, who informed Defendants Thompson and Creasman that H.C. had come onto school property without permission. [Record No. 43-6, ¶¶ 5-6] It is also supported by Defendant Creasman's testimony that he acted to "enforce the letter [he] had

written H.C. directing her to stay off school property without [his] prior permission," and his affidavit in the criminal complaint. [Record No. 43-2, ¶ 16, Attachment K] Similarly, the affidavit provided in the truancy complaint against R.D.C. supports the Board's assertion that the charges were not brought because of the § 504 hearing request, but instead because of R.D.C.'s sisters' twenty-two unexcused absences. [*See* Record No. 57, Exhibit 14.]

Because the Board has established a legitimate, non-discriminatory reason for the adverse actions taken against H.C. and R.D.C., the burden shifts back to the plaintiffs to establish that the Board's proffered reasons for the adverse actions are merely pretextual. *DiCarlo*, 358 F.3d at 414-15. To prove that the proffered reasons are pretextual, "[t]he 'plaintiff must produce sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendants did not honestly believe in the proffered nondiscriminatory reason[s] for its adverse . . . action[s].'" *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008) (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001)) (alterations omitted and added). A plaintiff can accomplish this by showing that the proffered reasons: (i) have no basis in fact, (ii) did not actually motivate the defendant's challenged conduct, or (iii) were insufficient to warrant the challenged conduct. *Id.* (citing *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)).

The plaintiffs have failed to carry this burden. There is extensive evidence in the record demonstrating a factual basis for believing that R.D.C. engaged in conduct which warranted two suspensions, and that H.C. engaged in conduct which warranted her being banned from school property and served with criminal complaints for trespass and truancy. [*See* Record Nos. 43-2, 43-3, 43-4, 43-5, 43-6.] Conversely, the plaintiffs have not provided any evidence from which a reasonable jury could infer that the Board did not honestly believe in the

proffered nondiscriminatory reasons for its adverse actions. *See Mickey*, 516 F.3d at 526. Accordingly, the plaintiffs' retaliation claims under § 504 and KRS Chapter 344 will be dismissed.

## B. R.D.C.'s Procedural Due Process Claim

R.D.C. contends that his January 11, 2016 suspension violated his due process rights under the Fourteenth Amendment and 42 U.S.C. § 1983. Specifically, he claims that the Board suspended him for more than ten days without providing adequate due process. The Board responds by noting that: (i) R.D.C. was only suspended for three days; (ii) R.D.C. completed regular schoolwork during his suspension; and (iii) the process that the Board provided was sufficient.

> To make out a claim for a violation of procedural due process, the plaintiff has the burden of showing that: (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest.

*EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). R.D.C. has cleared the first two hurdles. Kentucky citizens have a fundamental right to a public education. *Rose v. Council for Better Educ., Inc.*, 790 S.W.2d 186, 201 (Ky. 1989). The right to a public education is a property right protected by the Fourteenth Amendment. *Laney v. Farley*, 501 F.3d 577, 580–81 (6th Cir. 2007). Accordingly, suspending a student from a public school deprives him of a property interest protected by the Fourteenth Amendment. *Goss v. Lopez*, 419 U.S. 565, 580–82, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975).

However, the plaintiff has failed to demonstrate a genuine dispute of material fact regarding the third hurdle: whether he was afforded adequate procedural rights. R.D.C. has not provided *any* description of the process by which he was suspended. Instead, his

Complaint contains a conclusory allegation that the defendants suspended him "without providing the [p]laintiff minimal due process." [Record No. 1, ¶ 53]  The defendants' motion pointed out that "[to the extent that R.D.C.] was entitled to an explanation of the evidence against him and an opportunity to speak in his own defense before having a short term suspension imposed, consistent with *Goss v. Lopez*, 419 U.S. 565, 95 S. Ct. 42 L. Ed. 2d 725 (1975), there is no record evidence that this opportunity was denied to him." [Record No. 43-1, p. 22]  The plaintiff's only response was to re-allege that R.D.C. was suspended from school with "the bare minimum due process." [Record No. 57, p. 12]

The only evidence in the record regarding the process that R.D.C. received consists of a notice of disciplinary action from HES, addressed to R.D.C.'s parents, which describes the basis for the suspension, the names of the individuals that investigated the incident, and the length of the suspension. [Record No. 43-3, Attachment C]  Although H.C. appealed R.D.C.'s December 18, 2015 suspension in a phone call with Principal Thompson and a thirty minute meeting with Superintendent Creasman, there is no evidence of any appeal of his January 11, 2016 suspension, nor is there any evidence that R.D.C. was denied the opportunity to appeal. [Record Nos. 43-2, ¶ 8, Attachment D; 43-3, ¶¶ 11, 13, Attachment A]

Without evidence regarding the "minimal due process" R.D.C. was provided, there is no basis for a jury to determine whether or not that process was adequate.[6]  [Record No. 1, ¶

---

[6] The parties dispute whether HES provided R.D.C. with sufficient alternative education during the period of his suspension to prevent him from bringing a due process claim.  *See Buchanan v. City of Bolivar*, 99 F.3d 1352, 1359 (6th Cir. 1996); *S.B. ex rel. Brown v. Ballard Cnty. Bd. of Educ.*, 780 F. Supp. 2d 560, 566-68 (W.D. Ky. 2011).  They also dispute whether HES suspended R.D.C. for three days, requiring only the due process requirements specified in *Goss v. Lopez*, 419 U.S. at 581, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975), or functionally suspended him for seventy-five days, requiring "more formal procedures," *id.* at 584, 95 S. Ct. 729.  The outcome of these disputes is immaterial.  Without some evidence of the process R.D.C.

53] R.D.C. has thus failed to raise any factual dispute regarding the adequacy of the process that he received. Accordingly, his procedural due process claim will be dismissed. *See Celotex Corp.*, 477 U.S. at 322 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

## C. H.C. and R.D.C.'s State Law Claims

### 1. Defendant Fleming County Kentucky Board of Education's Governmental Immunity Defense

Under Kentucky law, "a state agency is entitled to immunity from tort liability to the extent that it is performing a governmental, as opposed to a proprietary, function." *Yanero v. Davis*, 65 S.W.3d 510, 519 (Ky. 2001). A local board of education is an agency of state government. *Id.* at 526, 527; *see also Clevinger v. Bd. of Educ. of Pike Cnty.*, 789 S.W.2d 5, 10-11 (Ky. 1990) (citing *Rose v. The Council for Better Education, Inc.*, 190 S.W.2d 186 (Ky. 1989)). "[L]ocal school boards fulfill a governmental function of state government by providing public education within a particular geographical area." *Yanero*, 65 S.W.2d at 526 (quoting *Cullinan v. Jefferson Cnty.*, 418 S.W.2d 407 (Ky. 1967)) (internal quotation marks and alterations omitted). The plaintiffs have not addressed this issue, or presented any argument to the contrary. Accordingly, the plaintiffs' state law claims for negligence, negligent training and supervision, and intentional infliction of emotional distress, against Defending Fleming County Kentucky Board of Education, will be dismissed.

---

received, a reasonable jury could not conclude that the defendants failed to provide the process required under any procedural due process standard, regardless of which standard applies.

### 2. Defendants Creasman, Thompson, and Hawkins' Qualified Immunity Defenses

The United States Supreme Court has explained that "[i]n resolving questions of qualified immunity, courts are required to resolve a threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 1774, 167 L. Ed. 2d 686 (2007). The plaintiffs bear the burden of proof on this issue. *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) ("Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing: (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.") (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982)).

The plaintiffs' argument that the defendants are not entitled to qualified immunity hinges on the assertion that they violated R.D.C.'s due process rights by suspending him for more than ten days without adequate due process. Because R.D.C.'s procedural due process claim has been dismissed, he has failed to show that the defendants violated a clearly established constitutional right. Accordingly, the plaintiffs' state law claims for negligence, negligent training and supervision, and intentional infliction of emotional distress, against Defendants Creasman, Thompson, and Hawkins in their individual capacities, will be dismissed. *See S.S. v. Eastern Kentucky Univ.*, 532 F.3d 445, 459 (6th Cir. 2008) (finding that there was "no reason to discuss the availability of qualified immunity" after summary judgment was granted as to the plaintiff's underlying constitutional claim).

## IV.    CONCLUSION

For the reasons set out above, it is hereby

**ORDERD** as follows:

1.    Defendants Fleming County Kentucky Board of Education, Brian Creasman, Carol Thompson, and Michelle Hawkins' motion for summary judgment [Record No. 43] is **GRANTED**.

2.    Plaintiffs H.C. and R.D.C.'s claims against Defendants Fleming County Kentucky Board of Education, Brian Creasman, Carol Thompson, and Michelle Hawkins are **DISMISSED**, with prejudice, in their entirety.

3.    The trial of this matter, previously scheduled to commence on October 3, 2017, is **CANCELED**.

4.    A corresponding Judgment will be entered this date.

This 25th day of September, 2017.



Signed By:

*Danny C. Reeves*

United States District Judge